K. Nolen TANNER

*v.*

DEPARTMENT OF REVENUE

(TC 3774)

K. Nolen Tanner (taxpayer) appeared *pro se.*

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for defendant rendered November 9, 1995.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals the 1993-94 assessed value of his land designated as Multnomah County Assessor's Account No. R-97132-0131. In its Opinion and Order No. 94-2702, the Department of Revenue (department) upheld the assessed value of $58,800. Taxpayer contends the real market value of the land is only $5,000.[1]

Taxpayer owns a 21-acre parcel, improved with his residence, just outside Portland's Urban Growth Boundary. During the relevant time, taxpayer's land was zoned for commercial forest use (CFU), with a minimum lot size of 40 acres, and a limit of one residence. This zoning prevents taxpayer from subdividing his property.

The 21 acres is all one tax lot, Tax Lot No. 13. A fire patrol district covers five of the 21 acres and, pursuant to ORS 478.010(2)(c),[2] is subject to the levy of the fire patrol district. Because these five acres are subject to an additional taxing agency, and thus a higher millage rate, the assessor's office established two separate assessment accounts for Tax Lot No. 13. The 5-acre tract, which contains taxpayer's residence, was designated as account No. R-97132-0130. The 16-acre account, No. R-97132-0131, is the subject of this appeal. Seven of the 16 acres were designated forestland during the 1993-94 tax year.

Taxpayer contends that the 16-acre account must be valued separately from his 5-acre account. In support of his argument, taxpayer testified that the assessor's office treats the two accounts independently. He explained that two separate tax bills are issued; he receives the tax bill for one account, and the Oregon Department of Veteran's Affairs, who holds a lien on the property, receives a tax bill for the other account. Taxpayer further points out that petition forms require only the account number and not tax lot. OAR 150-309.100(2). Taxpayer submitted an appraisal of the 16 acres only. The appraisal was based on a highest and best use of growing trees and utilized the income approach to

---

[1] Although his complaint claims the real market value was only $5,000, the appraisal taxpayer submitted at trial indicates a real market value of $6,880.

[2] All references to the Oregon Revised Statutes are to the 1991 Replacement Part.

value. It established an indicated value for the 16 acres of $6,880.

The department's evidence consisted of an appraisal of the entire 21-acre tax lot. The appraiser testified the market revealed a strong demand for land in the area for residential use because of the space and view. Based on this fact, the appraiser used a highest and best use of a rural residential estate. Using the sales comparison approach to value, he derived an indicated value for the 21 acres of $160,000.

■ The issue is whether the assessor's office must value each assessment account independently of the other, or value the entire tax lot and allocate that value between the two assessment accounts. If the assessor's office must separately value the two assessment accounts, the 16-acre account will not have a highest and best use as a rural residential estate because of the zoning restrictions. The court concludes that the real market value of land must be established based on the tax lot and not by separate accounts.

Each year the assessor's office is required to establish a system of code areas which represents all of the combinations of taxing agencies. ORS 308.221. Because five acres were within the fire patrol district, Tax Lot 13 was split by two code areas and the assessor had to establish two assessment accounts. This results in two different levels of taxation for Tax Lot 13. *See* ORS 478.001(1)(d), 478.010(2)(c) and 478.410(1).

ORS 308.205(1) requires assessors to value property at its real market value:

"Real market value of all property, real and personal, as the property exists on the date of assessment, means the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion from an informed buyer acting without compulsion, in an arm's-length transaction during the fiscal year."

■ ■ In preparing the assessment roll, ORS 308.215 requires the assessor to:

"[P]repare the assessment roll in the following form:

"(1) Real property shall be listed in sequence by account number *or by code area and account numbers.* For

each parcel of real property, the assessor shall set down in the assessment roll * * *:

"* * * * *

"(b)  A description * * * with its code area and *account numbers*." (Emphasis added.)

The statute's plural usage of "account numbers" indicates that a single parcel may have more than one account number. The legislature did not intend the value of a single parcel to be fragmented just because it is within more than one code area. Therefore, taxpayer's argument that the assessor must value his assessment accounts independently fails.

The fact that the assessor's office sends two different tax bills to two separate parties does not suggest that each assessment account must have an independent real market value determination. Rather, separate tax bills are needed to reflect the different taxing agencies within each account. Also, the assessor's office is merely following statutory procedure when it sends the one tax bill to the Oregon Department of Veteran's Affairs, which holds a lien on the property. *See* ORS 311.252.

Taxpayer also argues that the property's highest and best use is as forestland, based on the definition of forestland in ORS 321.257. However, that definition only applies to forestland that (1) has been specifically designated as forestland upon application or (2) has a highest and best use of growing trees. Taxpayer applied for a special forestland designation on seven of the acres and these acres are assessed as forestland. Taxpayer never applied for forestland designation on the remaining acres. The highest and best use of the tax lot is not for growing trees. It has a residence on it, and the market shows that such use is the highest and best use. Therefore, the balance of taxpayer's land does not fit within the definition of forestland under ORS 321.257.

Taxpayer also argues that the CFU zoning is more restrictive than the special forestland designation. Therefore, he reasons, the zoned land should have a lesser value. However, the statutes specifically provide tax relief for property designated as timberland upon application. Comparable

tax relief is not provided for land zoned CFU unless its highest and best use is for growing trees.

■ An appraisal of taxpayer's land must be based on the entire tax lot with a highest and best use as a rural residential estate. Taxpayer's appraisal was based on the value of the 16 acres only, with a highest and best use of growing trees. Consequently, it is of little relevance.

The department submitted an appraisal of the 21-acre tax lot based on a highest and best use as a rural residential estate. The comparable sales were appropriately located beyond Portland's Urban Growth Boundary and all were subject to the same zoning restrictions as the subject property. Therefore, the sales reflected any decrease in value due to the zoning restrictions.[3]

■ However, the appraisal does not allocate the value between the two accounts.[4] It is likely that the one acre homesite on it will have more value than the rest of the acres. Even if the court estimated the value of that one acre, it is not clear that all the other acres are equal in value. The court notes that the department's appraiser uses only $3,000 per acre to adjust his comparable sales for size, an amount obviously too low for every acre in the tax lot. Because the appraisal fails to identify how much value to attribute to the 16 acres under appeal, the court cannot properly use the value indicated in the department's appraisal. Consequently, taxpayer has not proven a lesser value and the department has not proven a greater value.

The court finds that the real market value of Multnomah County Assessor's Account No. R-97132-0131, as of July 1, 1993, is $58,800. Judgment shall be entered in accordance with this opinion. Costs to neither party.

---

[3] Taxpayer argues that the assessed values of the comparables were significantly less than the selling prices. However, assessed value is irrelevant in deriving real market value. Also, all of the comparables had received special forestland designations so their assessed values would be less than their real market values.

[4] The appraiser testified that the value should be allocated pursuant to ORS 308.229. However, that statute is not applicable in this case. *See* ORS 308.229(4)(a).